UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

     v.                                MAGISTRATE JUDGE NO.
                                          08-00201-MBB

KEVIN RYAN,
    Defendant.

**MEMORANDUM AND ORDER RE:
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, SUPPRESS EVIDENCE
(DOCKET ENTRY # 21)**

**August 4, 2010**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss the complaint filed by the United State of America ("the Government") charging defendant Kevin Ryan ("defendant") with operating under the influence of alcohol, unsafe operation of a motor vehicle and refusal to submit to a chemical test or, in the alternative, to suppress evidence derived from the stop of defendant's vehicle by United States Park Ranger David LaMere ("LaMere") on August 31, 2007.  (Docket Entry # 21).  The events leading up to and including the stop happened in and immediately outside the Boston National Historic Park, specifically an area known as the Charlestown Navy Yard[1] ("the Park").  (Docket Entry ## 22 & 24).

Having reviewed the papers, listened to argument at the April 13, 2010, motion hearing and considered the testimony and

---

[1]  The Charlestown Navy Yard is part of the Boston National Historical Park.  See 16 U.S.C. § 410z.

argument at the June 10, 2010, evidentiary hearing, this court
finds that LaMere conducted:  (1) an investigation pursuant to 16
U.S.C. § 1a-6(b)(3) of unsafe operation; (2) a <u>Terry</u>[2] stop to
investigate the possibility of defendant's operation under the
influence of alcohol; and (3) an unlawful de facto arrest of
defendant for operating under the influence.  Under the
circumstances, however, the probable cause arrest was not
unreasonable.  Therefore, evidence gathered subsequent to the
arrest is not suppressed.

PROCEDURAL BACKGROUND

Violation Numbers 0701746, 0701747 and 0701748 respectively
charging defendant with unsafe operation (36 C.F.R. §
4.22(b)(1)), operating under the influence (36 C.F.R. §
4.23(a)(1)) and failure to submit to a chemical test (36 C.F.R. §
4.23(c)(2)) were filed on January 3, 2008.  (Docket Entry # 1).
On December 8, 2008, defendant moved to suppress, which the
Government opposed (Docket Entry # 14), arguing that LaMere
lacked reasonable suspicion to make the traffic stop of
defendant's vehicle.  (Docket Entry ## 11 & 12).  On January 30,
2009, the court denied that motion.  (Docket Entry # 16).
Following a reassignment of the matter to this court on February
2, 2009, defendant filed the above styled motion to dismiss or,

_____

[2]  <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

in the alternative, to suppress evidence on July 6, 2009.
(Docket Entry # 21).  The Government opposes the motion.  (Docket
Entry # 24).  This court heard argument at the April 13, 2010,
motion hearing.  On April 14, 2010, this court ordered an
evidentiary hearing to evaluate whether and at what time a formal
arrest, or restraint of a degree associated with an arrest, took
place.  The evidentiary hearing was held on June 10, 2010.  The
Government called one witness and defendant did not call any
witnesses.

## FACTUAL BACKGROUND[3]

Late in the evening of August 31, 2007, LaMere "observed a
black Nissan Pathfinder . . . traveling West on 1st Avenue,"
within the boundaries of the Park.  (Docket Entry # 1, Violation
No. 0701748).  From his marked cruiser, LaMere saw that the
"Nissan turned north onto 5th Street . . . travel[ing] over the
lane dividing line into the south bound lane with both front
tires . . . [and then] traveling North for several yards with
both the front and rear tire of the driver's side over the center
dividing line."  (Docket Entry # 1, Violation No. 0701748).  "5th
Street" at that location lies within the Park's boundaries.

---

[3]  The factual record for this motion is comprised of:  (1)
the statements of probable cause in the citations (Docket Entry #
1) which were made under the penalty of perjury by LaMere on
August 31, 2007; and (2) the sworn testimony of LaMere at the
audio recorded June 10, 2010, evidentiary hearing.

LaMere followed the vehicle as it made a turn onto Chelsea Street, into the Charlestown neighborhood of the City of Boston. LaMere initiated, by activating his cruiser lights, a traffic stop of the vehicle as the vehicle approached Congress Street. The purpose was to issue a traffic violation citation.  As LaMere approached the vehicle, he observed a "strong odor of an alcoholic beverage."  The driver, identified as defendant, "had watery [or glassy] eyes, [flush complexion], slurred speech and the strong odor of an alcoholic beverage on his person."  (Docket Entry # 1, Violation No. 0701746).  LaMere asked defendant to provide his license and registration and defendant "had difficulty retrieving his vehicle registration."  (Docket Entry # 1, Violation No. 0701746).  LaMere asked defendant if he had been drinking and where he was coming from and defendant responded that he had been on a friend's boat and had four or five beers. LaMere asked if defendant would take field sobriety tests and defendant complied.

LaMere conducted four field sobriety tests including a preliminary breath test.  According to LaMere, defendant "showed several indications that he was impaired."  (Docket Entry # 1, Violation No. 0701746).  At that time, LaMere testified, he formed an opinion that defendant was intoxicated and unable to safely operate the vehicle.  LaMere did not contact a member of the Boston Police Department.  LaMere stated, "the next step in

4

the procedure would be to transport [defendant] to a processing area where he would be processed, charged and released."

LaMere did not provide defendant with a <u>Miranda</u>[4] warning. He placed defendant in handcuffs and transported him in his cruiser approximately one quarter mile to the Park's prisoner processing area.  At no point in time did LaMere tell defendant he was "under arrest," but instead informed him that he was "detained" for processing.

At the prisoner processing area, defendant was asked for identifying information.  Defendant "was read the 'notice to persons charged with operating under the influence of alcohol' sheet notifying him that he was required to submit to testing." (Docket Entry # 1, Violation No. 0701747).  Defendant "refused to submit to a test to determine his breath alcohol concentration." (Docket Entry # 1, Violation No. 0701747).

<u>DISCUSSION</u>

Defendant moves to dismiss the complaint charging him with operating under the influence (36 C.F.R. § 4.23(a)(1)), unsafe operation (36 C.F.R. § 4.22(b)(1)) and refusal to submit to a chemical test (36 C.F.R. § 4.23(c)(2)).  (Docket Entry # 21).  In the alternative, defendant moves to suppress "the evidence obtained as a fruit of the illegal arrests."  (Docket Entry ## 21

---

[4]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

5

& 22).  Defendant contends that "LaMere exceeded the scope of his statutory authority when he arrested the defendant outside the boundary of [sic] National Park Service."  (Docket Entry # 22). He further argues that, "The refusal charge is not sustainable because the officer who had no jurisdiction to arrest the defendant and no jurisdiction to transport the defendant continues to lack jurisdiction to ask the defendant to submit to a chemical test."  (Docket Entry # 22).

The Government opposes the motion raising four main arguments:  (1) LaMere was statutorily and constitutionally permitted to stop defendant's vehicle outside the territory of the Park; (2) defendant was not arrested, but rather "temporarily detained under <u>Terry</u>"; (3) "even if [defendant's] detention for processing is deemed an arrest, evidence gathered . . . prior to his transport to the park ranger's office for processing, should not be suppressed"; and (4) "even if [defendant's] detention for processing is deemed an arrest, evidence obtained after his transportation . . . should not be suppressed because [it] is not an unreasonable Fourth Amendment seizure on the facts of this case."  (Docket Entry # 24).  This court will address the encounter between LaMere and defendant chronologically.

I.  <u>The Initial Vehicle Stop</u>

Under 16 U.S.C. § 1a-6(b), United States Park Rangers may: (1) "make arrests without warrant for any offense against the

6

United States committed in his presence" as long as "such arrests occur within that system or the person to be arrested is fleeing therefrom to avoid arrest," 16 U.S.C. § 1a-6(b)(1); and (2) "conduct investigations of offenses against the United States committed in that system," 16 U.S.C. § 1a-6(b)(3), without any geographic limit to the investigation, see H.Rep. No. 94-1569, 94th Congress, 2nd Session 18; United States v. Smith, 713 F.2d 491, 494 (9th Cir. 1983); United States v. Strasnick, 2008 WL 2389789, *2 (D.Mass. June 10, 2008); United States v. Jones, 428 F.Supp.2d 497, 504 n.5 (W.D.Va. 1996).  Here, pursuant to 16 U.S.C. § 1a-6(b)(3), LaMere followed defendant outside the boundary of the Park to investigate a traffic violation observed within the Park.  LaMere initiated the traffic stop as defendant approached Congress Street while on Chelsea Street.  They were both outside the territory of the Park.

"The Supreme Court has long viewed the typical traffic stop to 'resemble, in duration and atmosphere, the kind of brief detention authorized in Terry.'"  United States v. Fernandez, 600 F.3d 56, 59 (1st Cir. 2010) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)).  "Like the reasonable suspicion that criminal activity is afoot in the Terry context, the detection of a traffic violation permits officers to effect a limited seizure of the driver and any passengers consistently with the Fourth Amendment."  Id. (citing Arizona v. Johnson, 129 S.Ct. 781, 788

(2009)); see also United States v. Chaney, 584 F.3d 20, 24 (1st
Cir. 2009) ("traffic stop constitutes a seizure . . . and thus
must be supported by reasonable suspicion that a traffic
violation has occurred").  Several courts analyzing 16 U.S.C. §
1a-6(b)(3) have held that "[t]here is no reason to believe that
Congress intended the park police officers' authority to
investigate be construed so narrowly as to exclude Terry stops."
United States v. Smith, 713 F.2d 491, 494 (9th Cir. 1993); see,
e.g., United States v. Strasnick, 2008 WL 2389789, *3 (D.Mass.
June 10, 2008) ("[b]ecause Ranger LaMere acted within his
investigative powers pursuant to § 1 a-6(b)(3), for which there
is no geographic limitation, he was authorized to stop Strasnick
outside of the Park to investigate the traffic violation . . .
that occurred inside of the Park"); United States v. Jones, 428
F.Supp.2d 497, 504 n.5 (W.D.Va. 2006) ("Chartier also had the
statutory authority to perform the stop outside the Park under §
1-6(b)(3)").

     The court in an earlier opinion on this matter determined
that "LaMere [had] specific and articulable facts to support his
suspicion that the defendant committed a traffic violation
warranting a stop."  (Docket Entry # 16).  This court has no
reason to doubt that finding and in fact the evidence before this
court confirms it.  Therefore, LaMere permissibly stopped
defendant's vehicle outside the Park for the purpose of

investigating defendant's unsafe operation and issuing a citation.

II.  Extension of the Vehicle Stop

Determining the reasonableness of a Terry stop involves a two-step inquiry.  See United States v. Caine, 517 F.Supp.2d 586, 588 (D.Mass. 2007) (citing United States v. Walker, 924 F.2d 1, 3 (1ˢᵗ Cir. 1991)).  "To work the calculus of reasonable suspicion in the context of a traffic stop, an inquiring court must ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau."  United States v. Chhien, 266 F.3d 1, 6 (1ˢᵗ Cir. 2001).  That analysis involves looking at the situation facing LaMere as a whole, see United States v. Trullo, 809 F.2d 108, 111 (1ˢᵗ Cir. 1987), including "the circumstances originally warranting the stop, informed by what occurred, and what [he] learned, as the stop progressed."  United States v. Chhien, 266 F.3d at 6.

As stated above, LaMere had reasonable suspicion, if not probable cause,[5] to stop defendant's vehicle to investigate the

_____

[5]  The Supreme Court in Whren v. United States stated, "the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code" and held that, "[t]hat rendered the stop reasonable under the Fourth Amendment."  Whren v. United States, 517 U.S. 806, 819 (1996). The Court in Whren affirmed the D.C. District Court's holding that, "When a police officer *observes* a traffic violation, his subsequent stop of the vehicle is reasonable because it is

observed traffic violation.  As LaMere approached defendant's
vehicle, he observed signs that something more than the initial
unsafe operation violation may have been afoot.  "The first part
of the [Terry] inquiry is satisfied if [the park ranger] can
point to specific and articulable facts which, taken together
with rational inferences derived from those facts, reasonably
show that an investigatory stop was warranted."  United States v.
Maguire, 359 F.3d 71, 76 (1st Cir. 2004) (citing United States v.
Sokolow, 490 U.S. 1, 7 (1989)).  LaMere noticed that defendant
had a flushed complexion, glassy eyes, slurred speech and the
smell of alcohol.  Defendant had difficulty retrieving his
vehicle registration.  Defendant admitted he had consumed alcohol
earlier in the day.

A park ranger receives deference to "draw on [his] own
experience and specialized training to make inferences from and
deductions about the cumulative information available to [him]
that might well elude an untrained person."  United States v.
Arvizu, 534 U.S. 266, 273 (2002).  LaMere concluded he had
reasonable suspicion to believe defendant was operating his
vehicle under the influence of alcohol within the Park.  This
conclusion was reasonable given defendant's visible signs of
intoxication and the smell of an alcoholic beverage.  See Terry

---

supported by probable cause."  United States v. Whren, 53 F.3d
371, 376 (D.D.C. 1995) (emphasis added).  Here, LaMere observed
defendant violate the traffic regulations of the Park.

v. Ohio, 88 U.S. at 21 ("objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?").

LaMere then permissibly requested that defendant exit the vehicle, see Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment"), and conducted a series of field sobriety tests to "quell or confirm [his] suspicions." Klaucke v. Daly, 595 F.3d 20, 25 (1st Cir. 2010). Conducting field sobriety tests is reasonable under the second step of the Terry analysis where a park ranger has reasonable suspicion that a driver is impaired. See, e.g., United States v. Maher, 454 F.3d 13, 18 n.5 (1st Cir. 2006); Rogala v. District of Columbia, 161 F.3d 44, 52 (D.C. Cir. 1998); United States v. Caine, 517 F.Supp.2d 586, 589-90 (D.Mass. 2007). At the conclusion of the tests, LaMere determined that defendant was intoxicated while driving in the Park and unable to safely operate the vehicle.

III.  De Facto Arrest

Following the field sobriety tests, defendant was handcuffed, placed in the back of LaMere's cruiser and driven to the Park's prisoner processing area. According to the

11

Government, defendant "was *detained* as part of an investigatory <u>Terry</u> stop only as long as necessary in order that legitimate law enforcement processes could be completed, and [he] was not subject to a custodial arrest." (Docket Entry # 24) (emphasis added). Defendant contends that "the officer here did far more than conduct a <u>Terry</u> stop." (Docket Entry # 22). This court returns to the second <u>Terry</u> inquiry, "whether the scope of the investigatory stop was reasonable under the circumstances." <u>United States v. Maguire</u>, 359 F.3d 71, 77 (1st Cir. 2004).

A <u>Terry</u> stop to investigate criminal behavior "permits officers to 'stop and briefly detain a person for investigative purposes,' . . . and 'diligently pursue[ ] a means of investigation . . . likely to confirm or dispel their suspicions quickly.'" <u>United States v. Trueber</u>, 238 F.3d 79, 91-92 (1st Cir. 2001) (citing <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)); <u>United States v. Sharpe</u>, 470 U.S. 675, 686 (1985). Here, after conducting the field sobriety tests, LaMere formed the opinion, much as he earlier suspected, that defendant had been operating under the influence within the Park. What occurred subsequent to the field sobriety tests crossed from a permissible <u>Terry</u> stop into the realm of a de facto arrest.

"There is no scientifically precise formula that enables courts to distinguish between investigatory stops . . . and . . . 'de facto arrests.'" <u>United States v. Zapata</u>, 18 F.3d 971, 975

(1st Cir. 1994).  "In cases regarding the scope of a Terry stop,
we examine 'whether there was "a formal arrest or restraint on
freedom of movement of the degree associated with a formal
arrest."'"  United States v. Maguire, 359 F.3d 71, 77 (1st Cir.
2004).  "[T]he relevant inquiry is how a reasonable [person] in
the suspect's shoes would have understood [the] situation."
United States v. Ventura, 85 F.3d 708, 711 (1st Cir. 1996).

While the "use of handcuffs in the course of an
investigatory stop does not automatically convert the encounter
into a de facto arrest," their use is one indication that a de
facto arrest may have taken place.  See United States v.
Acosta-Colon, 157 F.3d 9, 18 (1st Cir. 1998) ("the use of
handcuffs, being one of the most recognizable indicia of
traditional arrest, 'substantially aggravates the intrusiveness'
of a putative Terry stop").  The Government has pointed to no
"specific fact or circumstance" that would lead LaMere to
reasonably believe that use of restraints "was necessary to carry
out the legitimate purposes of the stop without exposing law
enforcement officers, the public, or the suspect himself to an
undue risk of harm."  United States v. Acosta-Colon, 157 F.3d 9,
19 (1st Cir. 1998) ("generalized statements are inadequate"); cf.
United States v. Meadows, 571 F.3d 131, 141-42 (1st Cir. 2009)
(Government articulated that suspect may have been armed,
involved in domestic dispute earlier in day and a flight risk);

13

see United States v. Fornia-Castillo, 408 F.3d 52, 64 (1st Cir.
2005) ("reasonable safety concerns permeated the [officer's]
decision to use [handcuffs]").  Regardless, defendant was not
merely handcuffed for a period of time and then released; rather,
LaMere additionally relocated defendant to the park ranger's
station.

"A valid investigatory stop can become an unconstitutional
interference with a suspect's Fourth Amendment rights as police
conduct becomes overly intrusive and amounts to an arrest."  Shah
v. J.W. Holloway, 2009 WL 2754406, *9 (D.Mass. Aug. 20, 2009).  A
"well-defined limitation is that a suspect may not be removed to
a police station without his consent."  Shah v. J.W. Holloway,
2009 WL 2754406, *9 (D.Mass. Aug. 20, 2009); see, Kaupp v. Texas,
538 U.S. 626, 630 (2003) ("involuntary transport to a police
station for questioning is 'sufficiently like arres[t] to invoke
the traditional rule that arrests may constitutionally be made
only on probable cause'"); Dunaway v. New York, 442 U.S. 200,
212-13 (1979) (finding " detention of petitioner was in important
respects indistinguishable from a traditional arrest" where "he
was . . . transported to a police station, and placed in an
interrogation room"); see also Flowers v. Fiore, 359 F.3d 24, 34
(1st Cir. 2004) (holding that officers involved "acted reasonably
in dispelling [their] suspicion throughout the detention" and
finding it "noteworthy that the officers never relocated Flowers

to a station house or detention area").  Therefore, despite the
fact that LaMere told defendant he was not under arrest,[6] the
combination of placing defendant in handcuffs and transporting
him to the park ranger station moves the encounter from a <u>Terry</u>
stop to a de facto arrest.  A reasonable person would have
understood that he was not free to leave.

IV.  <u>Suppression</u>

As mentioned previously, a United States Park Ranger may
make warrantless arrests for offenses committed in his presence
as long as such arrests occur within the park system or the
person to be arrested is fleeing therefrom.  <u>See</u> 16 U.S.C. § 1a-
6(b)(1).  Defendant points out that "no evidence indicates that
[he] fled from the Park to avoid arrest or that he even knew that
Officer Lamere [sic] had decided to follow [him]."  (Docket Entry
# 22).  In order to determine whether a suspect is fleeing,
district courts look to the location where a pursuing ranger
activates his or her cruiser lights.  <u>See</u> <u>United States v. Jones</u>,
428 F.Supp.2d 497, 501 (W.D.Va. 2006) (finding the defendant did
not "flee" where the rangers "did not activate their blue lights,

---

[6]  <u>See</u> <u>Dunaway v. New York</u>, 442 U.S. 200, 212-13 (1979)
("mere facts that petitioner was *not told he was under arrest*,
was not 'booked,' and would not have had an arrest record if the
interrogation had proved fruitless, while not insignificant for
all purposes, . . . obviously do not make petitioner's seizure
even roughly analogous to the narrowly defined intrusions
involved in <u>Terry</u>") (emphasis added).

thereby initiating the stop, until after they had traveled
outside of the Park"); United States v. Fox, 147 F.Supp.2d 1008,
1009 (N.D.Cal. 2001) (the defendant fled where ranger signaled
the defendant to pull over by activating lights within the park,
but the defendant drove an additional 200 yards outside the park
before pulling over).  LaMere testified that he initiated the
traffic stop by activating his lights once he and defendant were
outside the boundaries of the Park.  Therefore, for purposes of
16 U.S.C. § 1a-6(b)(1), defendant did not flee the Park.  Since
the arrest occurred outside the Park system and defendant did not
flee therefrom, LaMere was without federal statutory authority to
make the arrest.

Mindful that "[s]uppression of evidence . . . has always
been our last resort, not our first impulse," Hudson v. Michigan,
547 U.S. 586, 591 (2006), the issue before this court is whether
the evidence gathered subsequent to the unlawful arrest should be
excluded.  See Wong Sun v. United States, 371 U.S. 471, 483
(1963) ("to make effective the fundamental constitutional
guarantees of inviolability of the person . . . this Court held
nearly half a century ago that evidence seized during[, and
derived from,] an unlawful search could not constitute proof
against the victim of the search").  The exclusionary rule is "a
judicially created remedy designed to safeguard Fourth Amendment
rights generally through its deterrent effect on future unlawful

16

police conduct, rather than a personal constitutional right of the party aggrieved." <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974).  "Where 'the exclusionary rule does not result in appreciable deterrence, then . . . its use . . . is unwarranted.'"  <u>Arizona v. Evans</u>, 514 U.S. 1, 10-11 (1995).

The First Circuit has "not resolved whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment."  <u>Santoni v. Potter</u>, 369 F.3d 594, 598 (1st Cir. 2004) (declining to rule on the issue in favor of deciding the case on non-constitutional grounds).  There is a split in the federal circuits on this issue.  Compare <u>Street v. Surdyka</u>, 492 F.2d 368, 372-73 (4th Cir. 1974) ("[t]here is significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate"); <u>United States v. Jones</u>, 185 F.3d 459, 463 (5th Cir. 1999) (the relevant question when considering suppression of evidence is whether officials violated the Fourth Amendment, and concluding that state law deficiencies in arrest were irrelevant); and <u>United States v. Bell</u>, 54 F.3d 502, 504 (8th Cir. 1995) ("we do not think Fourth Amendment analysis requires reference to an arrest's legality under state law"); with <u>Malone v. County of Suffolk</u>, 968 F.2d

17

1480, 1482-83 (2nd Cir. 1992) (whether officers have valid
authority to arrest pursuant to state law affects the
constitutionality of the arrest); <u>Ross v. Neff</u>, 905 F.2d 1349,
1354 (10th Cir. 1990) ("warrantless arrest executed outside of
the arresting officer's jurisdiction is analogous to a
warrantless arrest without probable cause" which is
"presumptively unreasonable"); <u>and</u> <u>United States v. Foster</u>, 566
F.Supp. 1403, 1411-12 (D.D.C. 1983) ("concept of reasonableness
embodied in the Fourth Amendment logically presupposes an
exercise of lawful authority by a police officer").

This court looks to <u>Virginia v. Moore</u> for its historical
analysis of "the norms that the Fourth Amendment was meant to
preserve." <u>Virginia v. Moore</u>, 553 U.S. 164, 168 (2008). The
Court in <u>Moore</u> was "aware of no historical indication that those
who ratified the Fourth Amendment understood it as a redundant
guarantee of whatever limits on search and seizure legislatures
might have enacted." <u>Id.</u> "The immediate object of the Fourth
Amendment was to prohibit the general warrants and writs of
assistance that English judges had employed against the
colonists." <u>Id.</u> (citing <u>Boyd v. United States</u>, 116 U.S. 616,
624-27 (1886)). "That suggests, if anything, that founding-era
citizens were skeptical of using the rules for search and seizure
set by government actors as the index of reasonableness." <u>Id.</u>
Furthermore, "[n]one of the early Fourth Amendment cases that

18

scholars have identified sought to base a constitutional claim on a violation of a state or federal statute concerning arrest." Id. at 169.

The Moore Court found it was not faced with "a case in which the claimant can point to 'a clear answer [that] existed in 1791 and has been generally adhered to by the traditions of our society ever since.'" Atwater v. Lago Vista, 532 U.S. 318, 345 (2001).  Here, as in Moore, no clear answer exists[7] from our founding era to determine whether the overstepping of a federal statute mandating geographic jurisdiction of federal officers runs afoul of Fourth Amendment protections.  "When history has not provided a conclusive answer, [courts] have analyzed a search or seizure in light of traditional standards of reasonableness 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  Virginia v. Moore, 553 U.S. at 171 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).  "In a long line of cases, we have said that when an officer has *probable cause* to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."  Id. at 171 (emphasis

---

[7]  This court notes additionally that neither party provides any argument or analysis regarding an historical interpretation of the Fourth Amendment.

19

added).

"The underlying command of the Fourth Amendment is reasonableness, and the fact that an arrest may have violated a territorial-limitation statute . . . is merely a factor to be considered when deciding whether this constitutional mandate has been followed." United States v. Jones, 428 F.Supp.2d 497, 503 (W.D.Va. 2006).[8]  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is *probable cause* to believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (emphasis added).  Here, LaMere witnessed defendant driving within the Park minutes before conducting the traffic stop. Based on his observations of defendant when he approached the vehicle and the results of the four field sobriety tests, LaMere

---

    [8]  Defendant makes two arguments to distinguish Jones.
First, "unlike Jones, the arrest here did not occur just outside
the confines of the Park but fell well within the unmistakable
boundaries of the City of Boston."  (Docket Entry # 22).  This
court sees no reason to find that the distance from the boundary
line has anything to do with the reasonableness analysis under
the Fourth Amendment.  It suffices to say that in each case they
were outside the park boundary.
    Defendant's second argument is that, "the arresting officer
in Jones transported the illegally arrested suspect to a local
police station in Kentucky while the officer here transported the
illegally arrested suspect back to the Charlestown Naval Yard."
(Docket Entry # 22).  Based on this court's earlier discussion
regarding transporting defendant, no such distinction between a
local police station and the federal ranger's station need be
drawn.  See Shah v. J.W. Holloway, 2009 WL 2754406, *9 (D.Mass.
Aug. 20, 2009) (finding "that Shah's Fourth Amendment rights were
violated when he was transported at the direction of [Federal
Special Agent] Czellecz to the [Boston] police station").

undoubtedly had probable cause to believe that defendant had been operating under the influence within the Park.  See, e.g., United States v. Strasnick, 2008 WL 2389789, *4 (D.Mass. June 10, 2008) ("the odor of alcohol emanating from the vehicle, her impaired speech, and the results of the breath test and field sobriety tests indisputably provided him with probable cause for the OUI offense").

The totality of the circumstances leading up to and including the arrest guide this court to the conclusion that LaMere's seizure of defendant was constitutionally reasonable. LaMere witnessed a traffic violation within the Park.  He conducted a valid, albeit extraterritorial, traffic stop of defendant's vehicle.  Upon reasonable suspicion, LaMere conducted a Terry investigation to confirm or dispel whether defendant had been operating under the influence within the Park.  Following a series of field sobriety tests and a breath test, LaMere concluded that defendant was intoxicated and thus had probable cause that defendant had been operating under the influence within the Park.  LaMere handcuffed defendant and removed him from the scene of the traffic stop to the park ranger's station; actions which amounted to a probable cause de facto arrest.

LaMere did, however, violate the federal statute enumerating his jurisdiction to make warrantless arrests.  The House Report on 16 U.S.C. 1a-6(b) succinctly states, "Such arrests may occur

21

within the system, or while the person to be arrested is fleeing from the system to avoid arrest."  H.R. REP. 94-1569, *9, 2nd Sess. 1976.  The report goes on to say, "The Committee intends that the *clear and specific enforcement authority* contained in this subsection . . . will be implemented by the Secretary to ensure that law enforcement activities in our National Park System will continue to be viewed as one function of a broad program of visitor and resource protection."  Id. (emphasis added).

LaMere's violation of his arrest authority, while clearly contrary to the specific intent of the federal legislature, does not convert the otherwise reasonable, probable cause-based arrest of defendant into an unreasonable one.  See United States v. Caceres, 440 U.S. 741 (1979) (concluding that "evidence obtained in violation of Internal Revenue Service (IRS) regulations may be admitted at the criminal trial of a taxpayer" because "none of respondent's constitutional rights has been violated . . . by the agency violation of its own regulations"); United States v. Hensel, 699 F.2d 18, 29 (1st Cir. 1983) ("the fact that an agency's employees may exceed the scope of a statute's or a regulation's authority does not automatically make their actions 'unreasonable' either in Fourth Amendment terms or as a matter of ordinary understanding of reasonableness").  The discretionary placement of a park boundary line - subject to change by

22

congressional or perhaps Department of the Interior amendment[9] -
and the legislature's mandate that warrantless arrests by park
rangers occur within that boundary, do not control whether a
seizure is reasonable or not.  It is akin to a state's choice to
regulate the manner in which its officers conduct arrests, which
the Supreme Court says goes above and beyond Fourth Amendment
protection.  Cf. Virginia v. Moore, 553 U.S. at 176
("conclud[ing] that warrantless arrests for crimes committed in
the presence of an arresting officer are reasonable under the
Constitution, and that while States are free to regulate such
arrests however they desire, state restrictions do not alter the
Fourth Amendment's protections"); see United States v. Henry, 482
F.3d 27, 32 ("[t]he exclusionary rule was not fashioned to
vindicate a broad, general right to be free of agency action not
'authorized' by law").

In sum, LaMere entered the City of Boston pursuant to
statutory authority for the purpose of issuing a traffic
citation.  While conducting a Terry investigation as a federal
officer of the law, he gained probable cause for making an

---

[9]  The Charlestown Navy Yard geographic area includes:  "the
United States Ship Constitution and the *lands generally depicted*
on the map entitled 'Boundary Map: Charlestown Naval
Shipyard--U.S.S. Constitution, Boston National Historical Park',
numbered BONA 20,000 and dated March 1974 which shall be on file
and available in the offices of the Director of the National Park
Service, Department of the Interior, Washington, D.C."  16 U.S.C.
§ 410z(d).

arrest.  That probable cause, despite LaMere's statutory

jurisdiction, made it reasonable under the Fourth Amendment.

Since there was no unreasonable seizure, suppression is

unwarranted.  See Herring v. United States, 129 S.Ct. 695, 699

(2009) (exclusionary rule "designed to safeguard Fourth Amendment

rights generally through its deterrent effect").

V.   Refusal to Submit

     Finally, defendant argues that, "The refusal charge is not

sustainable because the officer who had no jurisdiction to arrest

the defendant and no jurisdiction to transport the defendant

continues to lack jurisdiction to ask the defendant to submit to

a chemical test."  (Docket Entry # 22).  To the contrary,

LaMere's request for a "chemical test" falls squarely within 36

C.F.R. § 4.23(c).  "The starting point in statutory

interpretation is 'the language [of the statute] itself.'"

United States v. Ramirez-Ferrer, 82 F.3d 1131, 1136 (1st Cir.

1996).  "When the words of a statute neither create ambiguity nor

lead to an entirely unreasonable interpretation, an inquiring

court need not consult other aids to statutory construction."

Atlantic Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224 (1st

Cir. 2003).

     The regulation defendant is charged with violating is 36

C.F.R. § 4.23(c), which states:

     At the request or direction of an authorized person who has

*probable cause* to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section [prohibiting operating under the influence], the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.

36 C.F.R. § 4.23(c)(1) (emphasis added).  The next subsection, under which defendant is cited as violating, "[r]efusal by an operator to submit to a test is prohibited and proof of refusal may be admissable [sic] in any related judicial proceeding."  36 C.F.R. § 4.23(c)(2).

Here, the plain language of the statute presents no ambiguity or unreasonable interpretation.  Nowhere in the regulation does it require that the refusal must occur within the park.  Furthermore, LaMere, an "authorized person," had probable cause to believe that defendant had operated under the influence within the park.  Therefore, it does not matter that LaMere brought defendant back onto park property before requesting that he submit to a chemical test.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss or, in the Alternative, Suppress Evidence (Docket Entry # 21) is **DENIED**.  A status conference will be held on August 24, 2010, at 2:30 pm for purposes of setting down a trial date.

                   /s/ Marianne B. Bowler
                   **MARIANNE B. BOWLER**
                   United States Magistrate Judge